**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Trustees of the Iron Workers District Council<br> of New England Pension, Health and<br>  Welfare, Annuity, Vacation,<br>  Education Funds, and other funds<br>   ("Trustees")<br>and the<br>International Association of Bridge, Structural,<br>  Ornamental and Reinforcing<br>  Iron Workers Local 7 ("Local 7")<br>   Plaintiffs,<br><br>v.<br><br>Quinn Bros. of Essex, Inc.,<br>and<br>Mass Steel Corp.,<br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>) |

**INTRODUCTION**

1. Plaintiffs allege that Defendants created a subterfuge to evade obligations required by a collective bargaining agreement ("CBA") and the Employee Retirement Income Security Act ("ERISA"). Plaintiffs seek to recover damages resulting from lost wages to employees covered by the CBA and delinquent contributions owed to trust funds administered by the Plaintiff Trustees.

**JURISDICTION & VENUE**

2. Subject Matter jurisdiction is provided by, and Plaintiffs sue in accord with, the Labor Management Relations Act ("LMRA"), 29 USC §185 *et seq*; the Employee Retirement Income Security Act ("ERISA"), 29 USC §§502, 515, 1132, 1192, *et seq*; and 28 USC §§1331.

3. Each Party named herein operates from offices in Massachusetts, more specifically, Boston, Essex, and Topsfield, MA (Suffolk & Essex Counties).

## PARTIES

4. The Trustees administer duly established employee pension, health and other employee benefit plans formed in accord with 29 USC §§185, 1002 (1), (2) and (3) from the funds' business offices located at 161 Granite Avenue in Dorchester, Massachusetts, 02124, County of Suffolk.

5. Local 7 is a labor organization defined in 29 USC §185 and ERISA.

6. Quinn Bros. of Essex, Inc. ("Quinn"), upon information and belief, is a Massachusetts corporation with a principle place of business located at 239 Western Avenue, Essex, MA 01929 and is an employer engaged in commerce within the meaning of §§3(5) and (12) of ERISA, 29 USC §1002(5) and (12) and within the meaning of §301 of the LMRA, 29 USC §185.

7. Mass Steel Corp. ("MSC"), upon information and belief, is a Massachusetts corporation with a principle place of business located at 458 Boston Street, Topsfield, MA 01983 and is an employer engaged in commerce within the meaning of §3(5) and (12) of ERISA, 29 USC §1002(5) and (12) and within the meaning of §301 of the LMRA, 29 USC §185.

## FACTS

8. Quinn signed a collective bargaining agreement ("CBA") with various local unions in New England, including Iron Workers Local 7 of Boston ("Local 7"). The CBA requires, among other things, that Quinn pay contributions to the Trustees for each hour worked by employees covered by the CBA into pension, health insurance, and other employee benefits plans to trust funds established by the CBA and administered by Trustees. Exhibit A (CBA).

9. During all times relevant to the matters contained herein, Quinn employed employees covered by the CBA on various construction projects within Massachusetts.

10. During all times relevant to the matters contained herein, Quinn subcontracted in violation of the CBA, i.e., to non-union installers, to evade its contractual and statutory obligations owed to each Plaintiff regarding wages and benefits.

11. When executed in 2008, the CBA originally had a five-paragraph Addendum. <u>Exhibit A</u> (CBA, at "Employer" Addendum).

12. Paragraph 1 of that CBA Addendum expired June 30, 2010.  <u>Exhibit A</u> (CBA, at Addendum ¶1 (e)).

13. About December 2011, Defendants conspired to evade the CBA's no subcontracting clause and to evade the CBA's wages and ERISA obligations. More specifically, Defendants devise a scheme to incorporate a shell or paper company, i.e., MSC. Local 7 learned of MSC about November 2012. Upon investigation during 2013, however, Local 7 learned that MSC was simply a scheme to evade the CBA and was not a *bone fide* entity seeking arms-length business transactions.

14. Defendants, during the past 24 months or so used, upon information and belief, MSC to contract with general contractors to perform work covered by the CBA and "on paper" subcontracted to Quinn to fabricate steel and to non-union subcontractors to install the steel without using the CBA or union members. As examples of this evasive scheme:

    a. MSC's corporate records names John T. Coughlin ("John T."), as its president.

    b. Quinn's corporate records names John E. Coughlin ("Jay") as its president.

    c. John T and Jay are father and son.

    d. John T substantially operated Quinn in all its past corporate identities and continues to substantially operate Quinn:

3

      i. Quinn was incorporated about 1994 and had different names since its inceptions before its current name/identification, i.e., Quinn Bros of Essex, Inc.

      ii. John T was at one time formally named as the president of Quinn.

      iii. Jay is the currently named president of Quinn.

      iv. Quinn and all its former identities have operated substantially identically. They operated, upon information and belief, from the same place, used the same phone numbers, accountants, lawyers, supervisors, employees, equipment, workers compensation carriers, engaged in identical business purposes, engaged in identical business operations, contracted with the same suppliers, customers, all in the same geographic locations (primarily eastern Massachusetts), and provided the identical services and product, i.e., steel fabrication and installation, primarily in Massachusetts.

15. John T remains substantially in a management position in, or joint control, of Quinn. E.g.:

    a. John T uses an office at Quinn's Essex, MA building and negotiates regarding labor relations and other Quinn (not MSC) steel erection related matters, e.g., as detailed further below;

    b. John T owns the real property and building on which Quinn exists and operates.

    c. John T is owner of the real property at which MSC lists as its address.

    d. On many occasions Union representatives would deal with John T for matters regarding Union labor affairs and Quinn. E.g.:

      i. John T negotiated and handled affairs regarding Local 7 and a project in Worcester during about 2011-12. Then, he had discussed with Kevin

    McKinnon, the Union's Business Agent, all matters regarding Local 7's target program (wage & benefit money reimbursements and labor relations affairs).

  ii. During a meeting about 2011, John T negotiated arrangements regarding the Union's target program for a dog kennel project located in Dorchester, MA. That discussion occurred in John T's office located on the second floor at Quinn's location with Neil Conley, another Local 7 Business Agent;

  iii. During those meetings, Quinn manifested clear acts and utterances that John T spoke for Quinn.

16. MSC operates, upon information and belief, for the primary purposes to evade and avoid ERISA contributions and to evade and avoid the CBA's wage and benefits provisions.

17. MSC does not contract with any entity for fabrication or installation of steel other than for steel fabrication and installation by Quinn.

18. During the past 24 months or so, Quinn has subcontracted, upon information and belief, in violation of the CBA or has otherwise engaged in a scheme or subterfuge with MSC to evade obligations owed under ERISA and to the Trustees on each of the following projects, or more:

  a. Endicott College about the 2011-12;

  b. Keurig Coffee in Burlington, MA during 2012;

  c. Bagnell School in Groveland, MA during 2012-13;

    d. At a Lynnfield shopping center Quinn contracted with a temporary employment entity named Trillium Construction that sent non-union workers to work on steel being installed by a Quinn subcontractor named Irish Iron;

    e. During about the spring of 2013, on a project located off Route 1 in Chelsea, Quinn contracted with Ajax –a non-union steel erector;

    f. The Pingree School in Hamilton, MA; and

    g. Most recently during the fall/winter 2013 a project in South Boston, MA.

19. During the past year, Local 7 agents, more specifically –Messrs Steve Williams and Shawn Nehiley, investigating MSC & Quinn learned from statements uttered to them by representatives of general contractors and others at jobsites that Quinn had subcontracted directly from the general contractor and directly subcontracted the installation of the steel, not MSC, and that Quinn subcontracted with the installers, not MSC. More specifically and for example, Mr Williams was told by the project manager for the a general contractor on a Groveland, MA Bagnall School project that Quinn indeed contracted to fabricate the structural steel on the project and that Quinn subcontracted with Georgetown Iron –a non-union employer to install that steel. But, in a letter to the Union dated November 1, 2012, Quinn's counsel stated that "Quinn Brothers is not contracted for the structural steel on the project" only the miscellaneous portion of the project.

20. On some projects, Quinn would employ, upon information and belief, employees without abiding by the CBA's wage and benefit provisions, e.g., it employed its shop workers to do repairs on constructions jobsites. It may use shop workers for such purposes, but it must abide by the CBA wage and benefit rates, and it failed to do so.

21. By the actions recited above, Defendants have created and operated an *alter ego*, joint employer relationship, or otherwise engaged in material misrepresentations and subterfuges to evade obligations under the CBA and ERISA.

## CAUSES OF ACTION

### COUNT I
(Violation of Collective Bargaining Agreement – Wages and Contributions)

22. The Plaintiffs restate all of the facts and allegations set forth in each of the Paragraphs above, and by this reference incorporate them herein.

23. The failure of Quinn to pay the contributions owed for labor performed by employees on construction jobsites violates the terms of the CBA, said violations having caused grave damage and loss to the Plaintiffs.

### COUNT II
(ERISA: Plaintiffs v Quinn & MSC)

24. The Plaintiffs restate all of the facts and allegations set forth in each of the Paragraphs above, and by this reference incorporate them herein.

25. The repeated and continued failure of Quinn to pay all contributions owed under the CBA for labor performed by all covered employees, along with interest owed, violates §515 of ERISA, 29 USC §1145.

26. Defendants' design, creation, and use of MSC constitutes transactions whose principal purposes are to evade or avoid liability under ERISA, and Plaintiffs are entitled to relief provided at ERISA §1192(c), i.e., the application of Defendants' liability without regard to such transactions and therefore, payments into the appropriate ERISA governed plan.

### COUNT III
(Third-Party Beneficiary Claim: Trustees v Quinn & MSC)

27. The Trustees restate all of the facts and allegations set forth in each of the Paragraphs above, and by this reference incorporate them herein.

28. The Trustees are third-party beneficiaries of the CBA.

29. This is a cause of action for breach of the CBA, pursuant to 29 USC §185, which breach caused grave harm and loss to the Trustees in the form of serious and substantial loss contributions and risks to the actuarial projections of employee benefit plans creating increased withdrawal liability to other employers signatory to the CBA -absent recovery sought herein.

## COUNT IV
(Breach of Good Faith & Fair Dealing: Plaintiffs v Quinn & MSC)

30. The Plaintiffs restate all of the facts and allegations set forth in each of the Paragraphs above, and by this reference incorporate them herein.

31. By the above and other acts, Quinn has breached its duty of good faith and fair dealing with each Plaintiff resulting in loss of wages, benefits and other serious harms.

## COUNT V
(Fraudulent Misrepresentation)

32. The Trustees restate all of the facts and allegations set forth in each of the Paragraphs above, and by this reference incorporate them herein.

33. More specifically, by letter from Defendants' lawyer dated November 1, 2012, Defendants misrepresented that MSC was a duly organized entity not solely designed to evade the obligations under the CBA and ERISA. That representation was false.

34. By creating MSC, Defendants misrepresented to Plaintiffs the actual relationship between MSC and Quinn and the actual purpose of MSC, i.e., solely designed to evade the CBA & ERISA -e.g., the CBA's wage and employee benefit plan contribution provisions.

35. Plaintiffs reasonably relied upon that misrepresentation that MSC was a separate and distinct entity not solely designed to evade wage and benefits.

36. Upon further investigation, Local 7 learned facts recited above entitling Plaintiffs to the relief stated herein and this is a cause of action for fraudulent misrepresentation that caused serious harm and loss to Plaintiffs.

## COUNT VI
(Injunctive Relief: Trustees v Defendants)

37. The Trustees restate all of the facts and allegations set forth in each of the Paragraphs above, and by this reference incorporate them herein.

38. The Trustees hereby request an injunction enjoining Defendants from performing work covered by the CBA without paying contribution into the employee benefit plans.

39. Absent an order from this Court, Quinn will continue to evade the CBA and will continue to refuse to pay contributions owed to the Trustees causing irreparable harm, as follows:

   a. Other employers signatory to the plans may incur withdrawal liability;

   b. The actuarial projections will not be met harming the soundness of the plans;

   c. The Trustees, as required by the plans, may be forced to notify Participants that plans are operating at risk to non-funding, which will frustrate participants with the plans' sustainability resulting in employees leaving to work for employers that are not signatory to the plans (i.e., non-union employers) further reducing the potential contributions that might otherwise come into the plans and help to meet actuarial projections.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows.  Order:

   A. Defendants to pay the Trustees all past money;
   B. Defendants to reimburse all past and present employees for lost wages and benefits not paid by the Defendants;
   C. That Defendants' liability to the Trustees be determined as provided in ERISA, at 29 USC §1192(c), i.e., without regard to MSC related transactions;
   D. Defendants to pay the Trustees and each trust plan their attorney fees and costs pursuant to ERISA, 29 USC §§1132 (g)(1) and where appropriate, add any

9

        additional amounts owed, including interest, penalties, and liquidated damages, all in accord with 29 USC §§1132 (g)(1) and the CBA;

E.       That Defendants be enjoined from failing to pay timely contributions in accord with the CBA; and

F.       Provide such other and further relief as the Court deems just and fair.

                                     Plaintiffs,
                                       by and through their attorney,

                                     /s/ Mickey Long
                                   Mickey Long, BBO No. 634388
                                   PO Box E-1
                                   193 Old Colony Ave.
                                   Boston, MA 02127
                                   Tel. (617) 269-0229
                                   Fax 617.765.4300
December 23, 2013                    mickeylong@outlook.com